Good morning, Your Honors. Good morning. Erin Melissa Brenner for the Appellant, Mr. Malone, and may it please the Court. Both parties agree, and Judge Harris actually just stated in the previous oral argument, that Petitioner for Compassionate Release deserves an individualized determination as to whether there are extraordinary and compelling circumstances underlying that petition and whether the 3553A sentencing factors weigh in favor of that release. That individualized determination did not happen for Mr. Malone. As stated by the Supreme Court in Chavez Mesa, a district court must adequately explain a chosen sentence to allow for meaningful appellate review. Unfortunately, that did not occur. Mr. Malone concedes that the explanation does not need to be lengthy, does not need to go through every argument the petitioner raises. However, that's only if the matter is conceptually simple and the record makes clear that the sentencing judge considered the evidence and arguments. That record is not here, and there is a mountain of mitigating evidence between when the initial sentencing occurred and when Mr. Malone submitted his first petition. First, this is not a simple case. This is not United States v. High. There was considerable time between those sentencings. There was a pandemic in between. Mr. Malone developed serious health conditions, made it very concerning for him to be in prison. Also, the district court seemed to look to home confinement as a way to excuse its requirement that it give a reasoned analysis of a compassionate release petition instead of taking the facts and the arguments on the merits. Even though Mr. Malone is on home confinement, and I know there was some last minute filing yesterday, the issue is not moot. Home confinement is extremely restrictive. It's very difficult for him to manage it with severe health conditions. His heart is failing, so he is an emergency room trip away from being labeled an escapee. He lives in a really rural area. His phone service is intermittent. There are constant phone calls that he is required to make. If he has a health emergency, I want his first concern to be how do I get emergency medical attention, not how do I get in touch with a counselor or make a phone call just to make sure that I am not put back in prison. These technical violations where someone misses a phone call, their GPS ankle monitor malfunctions, they're not as rare as they should be. There have been cases where people have missed a phone call because they're in a computer class. They've been labeled an escapee by the time they get out of that class and turn their phone back on. So Mr. Malone has deep concerns about if something happens to him and he doesn't have prior authorization to get that medical attention, whether he is in danger of putting himself back into prison. If he goes back into prison, it's not even just COVID at this point. He could catch the flu and it could be deadly for him right now. I just want to make sure I understand what you're saying. So the second motion, the counsel motion for release makes these two distinct arguments. One is apart from COVID, your client's age and his deteriorating health, those are the extraordinary and compelling circumstances. The other is this medical condition puts him at increased risk of COVID. Are you saying that the district court didn't adequately address the COVID risk argument? It's not enough even as to the COVID risk argument to say, look, you're on home confinement. So you are not your term of imprisonment is not putting you at risk of COVID anymore because you are home. I am saying that the district court did not engage in any analysis of the facts before it or legal analysis. Given this court's precedents about how I don't I'm sorry. So I understand your argument that the district court didn't address the non COVID related reasons for release. He's old. He's very sick. Is it also your position that the district court did not address sufficiently the COVID risk argument, that it is not enough to address that argument to say this person is at home on home confinement where his medical needs are met? Just Harris, I'm saying the district court did not do that analysis, did not ask that question about whether it was specific COVID-19 specific. But the district court also did not go through the sentencing factors and did not go through kind of a separate extraordinary and compelling release analysis. There was a previous pro se petition in 2019 that Mr. Malone submitted where he outlined really well what his health conditions were. That's why I'm saying this is not like high where the record as a whole doesn't give us confidence about the reason basis for the opinion. So when the district court received that, it received his pro se petition. And in the holding, it listed the 1B1.13, the US sentencing guidelines as guidelines to what would be extraordinary and compelling and said that Mr. Malone did not meet any of those extraordinary and compelling circumstances. That was just factually inaccurate, Your Honor. He actually met both prongs, the age of the defendant. He was over 65 and he'd done over 10 years of the sentence, as well as the medical condition, because he could not keep himself healthy or safe in a prison environment with his multiple health conditions. Did I adequately answer your question? I probably just wanted to make sure. I know that the US just submitted something saying that this case, according to the Seventh Circuit, would be moot because Mr. Malone is on home confinement. The Seventh Circuit case, it came out, it was decided in March. It's very, very different than this case here. In that case, that petitioner did not have extraordinary and compelling circumstances. The health conditions were extremely minor. He had hypertension, which was controlled with medication, and he had the gene for sickle cell, but he did not have sickle cell. They're very different issues. And there, the defense counsel agreed that it was fine that he was moving to supervised release shortly because his health conditions were not so severe that he needed immediate reduction of his sentence. We are actually not asking for immediate release. Originally, the prior petition asked for supervised release instead of home confinement. Supervised release would ensure that Mr. Malone could take care of his health problems without being labeled an escapee. He would have more flexibility to go food shopping, let's say, if he's, when he's not having a bad day. He hasn't, there are lots of bad days for him now. And so, yes. I'm sorry, and maybe this goes back to my original question, and then I promise I will stop on this point. I thought the Seventh Circuit decision was distinguishable because there, the only argument for extraordinary and compelling circumstances was COVID risk. And the court, in that case, at least suggested that, look, if that's your only argument, COVID risk, and you're on home confinement, you're done. Your case is different because all along I understood the crux of your motion not to be the COVID risk, but in fact to be this is a man in his 70s with a colostomy bag and very severe health conditions. He's not going to recidivate. He's not a threat to the public. He doesn't need to be thoroughly further deterred. And in light of his health and his age, putting to one side COVID, he should be, this sentence is no longer just, he should go home. That argument was not being made in the Seventh Circuit. That seems to me to be a pretty fundamental distinction. Yes. Yes, and it was a big part of why the Seventh Circuit said, well, you were asking for him to go home. He is home. That's fine. That's answered the issue. The Petitioner's Council agreed with that. All along, Mr. Malone has argued that at this point, even home confinement is too onerous for him. He is still technically in custody. He could be ordered back at any time. There have been these news stories about technical violations. Someone misses a phone call. One of the petitioners was stuck in Hurricane Ida and was ordered back to prison for being an escapee because they got stuck on the side of a highway. You don't want a do-over here. You want us to rule that his sentence should be ended. You want us to order the motion you made to be granted. He served his time. He's no longer on home confinement. Actually, Your Honor, there would be a number of things this court could do that would be— Isn't that what you want? Ideally— That's what you asked for. Originally, it was asked for he be moved to either it be granted or he be moved to supervised release instead of home confinement. I think if this court has factual questions about the home confinement or about whether the 3553A sentencing factors could somehow still be an issue, remanding it to the district court to actually do the legal analysis that was in front of it would be— —was to say that the court erred in failing to properly consider the home confinement, rule that it was error, rule that his sentence should be reduced, as you asked, and the motion be granted. Yes, Your Honor. You want us to take care of that for you. That would be wonderful, Your Honor. I mean, that's what you asked for. Yes. Okay. That would be a drastic remedy, wouldn't it?  If he thought there was error about the consideration of the home confinement, send it back and say consider it properly. Yes. Have a redo. You asked us to remand. Yes, remand. That is literally what you asked us to do. I assume you meant remand for the district court to now consider the argument that has not yet been considered. So you're abandoning that effort. It says remand. I believe this court has the authority to do so, but I am asking for the case to be remanded. By all means, Your Honor, if you would like to grant everything that we were asking for, far be it for me to stand in that way. However, I do believe if it is remanded, the district court should consider whether home confinement is appropriate. BOP itself has said that home confinement is not appropriate as a long-term solution, and it is not working for Mr. Malone. Further, because I'm concerned generally also just looking at the record as a whole, the district court did not engage in the legal analysis that the Supreme Court required under Chavez-Mesa. It had been 13 years since that original sentencing. There is a mountain of mitigating evidence that the court never considered. This court said in Martin that a court cannot simply recite bad deeds and ignore the mitigating evidence in between. Mr. Malone not only has severe health problems, but with his severe health problems, he moved himself from medium security to low security in prison, and then BOP granted him home confinement. Most district courts see that grant of home confinement as a mitigating circumstance, rather than to be used against a petitioner in denying their release. I'd also like to discuss, I believe that the orders here don't evidence a reasoned basis. And again, we are not asking that the district court answer every single argument. However, I think that home confinement does raise a number of new issues. And because the argument now is that home confinement is not sufficient, supervised release would be more appropriate for someone with such severe health issues, the district court should do that analysis instead of saying that home confinement is enough. I'll preserve the rest of my time, unless your honors have more questions. Thank you, Ms. Brenner. Ms. Taylor. Good morning, your honors. May it please the court, Laura Taylor on behalf of the United States. Defendant Lonnie Malone seeks to convert his custody status from one of home confinement to a full release, excusing him from about 11 years of a 24-year sentence. And to get there, he's bringing solely a procedural challenge to the district court's denial of his motion to reduce the sentence. He does not bring a substantive challenge to the district court's decision. Defendant Malone's procedural challenge must fail because the district court's decision denying compassionate release complies with this court's binding precedent in United States v. High. In High, this court held that how detailed an explanation a district court must give turns on the particular circumstances of any one given case. And there are two driving factors. The first is the complexity of the case. Generally speaking, the simpler the case, the simpler an explanation that is required. And the second driving factor is the judge's prior awareness with the defendant's arguments. If the judge who is handling the compassionate release motion is the same judge who handled, for example, the trial or the sentencing or the post-conviction proceedings and has awareness with the exact same arguments previously made or the 3553 factors from prior hearings, then a simpler explanation is likewise appropriate. Here, both factors weigh in favor of requiring a simple explanation for the district court's denial of Mr. Malone's compassionate release motion. Judge Jones presided over the entirety of Mr. Malone's district court proceedings, from indictment to plea to sentencing and to multiple rounds of collateral release. But that doesn't give him any sort of prior insight into the crux of the motion, which is that since that time, this man has become old and also in very, very serious poor health to the point where he's carrying his colostomy bag around with him. I mean, none of that came out of the original sentencing, so I don't really see how that weighs. I do understand that in doing the 3553A balance, the district court would have familiarity with the severity of the crime and the criminal history, but we've said that when there's this intervening set of circumstances, we're going to need something that addresses that. Yes, Your Honor, absolutely. But here, the district court did address that because Mr. Malone, in 2019, filed a motion for compassionate release based on his medical conditions, and Judge Jones denied that motion for compassionate release as related to the very specific and same medical conditions. But the problem is that he did that under the policy statement. He said it didn't meet the criteria of the policy statement, but after that decision, we held in McCoy that it doesn't have to. And so I'm not sure we have the district court ever considering that question under the right standard. Understood, Your Honor. But he did understand and was presented with the defendant's medical condition in 2019. He was familiar with the facts. And then when represented with the exact same issue in 2020 on the renewed motion for compassionate release, the judge ordered a home study to determine whether or not Mr. Malone's medical needs were indeed being met. But that's not the question for compassionate release, whether his medical needs are being met at home. The question is, in light of his age and his health condition, under the 3553A factor, should he be entitled to a shorter sentence? Not is he okay at home, but should his sentence now be shorter? And I don't see where the district court considered that because in the first motion, when it was sort of squarely in front of him, all he said was it doesn't meet the policy statement, which is not the right question, which the district court didn't know at the time, to be clear. But since then, we have made clear that's not the question. And then in the second motion, he appears to be just sort of saying, look, there's no COVID problem anymore. He's at home and his medical needs are met. But in neither one does he address sort of the underlying claim for compassionate release under the right standard. Respectfully, no, Your Honor. Before the court were to get to the 3553A factors, the court would first have to determine whether or not Malone met the E&C requirement, the Extraordinary and Compelling Circumstances requirement. That's step one. If he does not satisfy E&C, the court never needs to get to 3553A. And here, the question regarding E&C is whether or not Mr. Malone has an extraordinary and compelling circumstance to justify reducing his sentence from home confinement to full release. And where, in your view, did the district court answer that question? In two places, Your Honor. First, the district court stated he conducted a complete review of the merits and denied this for the basis asserted in the government's brief. The government extensively briefed this. I'm sorry. Is this in the first order or the second? In the second order, Your Honor. At JA97 is the district court's order denying compassionate release. And the court states that it conducted a complete review of the merits and for the reasons stated on behalf of the United States, it's ordered that the motion is denied. And the government briefed this as in its brief stating that Mr. Malone had not presented a basis for E&C because he was on home confinement and his medical needs were being met. His daily needs were being met. There were no issues with respect to the medical treatment. And the judge adjudicating the motion adopted the reasons stated on behalf of the United States after a complete review of the merits. But moreover, the order then goes on to say that indeed the investigation by a probation officer of the court revealed that Malone is no longer living with his brother but has been permitted to relocate to his own home. He has appropriate access to medical treatment and his daily needs appear to be met. Again, supporting the determination that there was no E&C and therefore no 3553A analysis is required. I will stop in a minute. But that to me seems like a very solid, straightforward response to the argument that because of COVID risk, that the risk of COVID and serious illness from COVID is his extraordinary and compelling reason. He's at home. His medical needs are met. Done. It seems to me to be a complete non sequitur to an argument that because of his age and health, his sentence should be shorter. Just compassionate release, not the part where you can't care for yourself in prison in light of the COVID risk. You can't protect yourself from COVID in prison. This is a different argument. This is now the sentence ought to be shorter. Compassionate release and home confinement are two different things. I didn't understand the district court to be addressing anything but COVID risk in this order. You think the district court is also addressing the separate argument that the sentence ought to be shorter? Yes, very much so, Your Honor. In part because the district court had previously addressed it a year before. I understand Your Honor's point that it was pre-McCoy. But he did address that very same issue as to whether or not the health conditions amounted to E&C. I understood the district court and quite fairly to be, I don't want to put myself in the district court's head, but to be thinking I already addressed that one. I took care of the stuff that's not related to COVID in my first order. This time I have to address COVID. That's the intervening thing that happened. And the fact that this person is at home takes care of the COVID risk. So now I'm done. Respectfully no, Your Honor, and we know that because Judge Jones specifically states in his order that Mr. Malone is no longer living with his brother and is now living on his own. And the reason that matters is because that is directly responsive to Mr. Malone's argument that his medical conditions alone are in E&C justifying compassionate release. The judge can only respond to the arguments that are presented to him. And Mr. Malone's motion for compassionate release argued that he was living with his brother and that was making it more difficult to get medical treatment. And by the time the home study took place, that the judge ordered, Mr. Malone was no longer living with his brother and was now in his own home, in the comfort of his own home, getting all of his medical needs met. That was the argument that was made with respect to compassionate release on the basis of his medical conditions. And the judge responded to that by confirming that he was indeed in the comfort of his own home, getting his medical and daily needs met. So he did respond to that argument. But here's the problem. What part of his medical condition is temporary? Certainly Mr. Malone has certain permanent medical conditions. And the answer, none? I am not a doctor, Your Honor. I don't know if his medical condition is permanent. You don't have to be a physician. He's not going to get better from what he's suffering from. That is true, Your Honor. But the judge knew that. You can't put his colon back and those things have been surgically removed, whether necessary, based on. That's permanent, correct? You can say the truth is okay to say yes. He's a colon cancer survivor and that will always be true. And he has suffered serious ailments. It's more than just a cancer survivor. Come on now. His whole lifestyle has changed. When he was in prison, he talked about people didn't want to be around him because if that bag has any kind of leak, the olfactory senses are repulsive to anybody. To say that he's just a cancer survivor? No, Your Honor. I thought you said that. I had intended to continue on and agree with you, Your Honor, that he obviously has long lasting effects. But isn't the question, though, whether or not he merits a reduction in sentence because of those nonchanging permanent conditions? Not whether it's COVID, not whether he's with somebody, another relative here, or what that changes in life daily. That's how life is. It's back and forth. But there is no back and forth for him. Yes, Your Honor, but that raises a substantive question as to whether or not the district court's conclusion was substantively correct, and that's not on appeal here today. The only thing Malone appealed was a procedural challenge to the district court's decision, whether or not his explanation was adequate under United States v. High. That is the only issue before this court today. And under an abuse of discretion standard where the district court must simply do enough to make sure that his decision was not irrational or arbitrary and to establish that he considered all of the arguments and had a reasoned basis, Judge Jones's decision more than adequately meets that standard. He specifically states that he considered all of the arguments, that he conducted a complete review of the merits, that he adopted the reasons set forth in the United States brief. He then went on in several sentences to address the home study that was ordered, the fact that all of the medical needs are being met, that Mr. Malone is no longer in his brother's home, which was a chief complaint at the district court level, and decided that considering all those facts, in addition to the 3553A factors, which is a separate and second step in the analysis, that no relief was warranted. So we have a case here where there's no EMC and it's denied under 3553A after a complete review of the filing by the judge. So you're saying your government's position that this is not an extraordinary circumstance, his medical condition, is not? It's the government's position that the district court adequately explained that it was not an EMC. Your position is that this is not an extraordinary condition? It is not an extraordinary and compelling circumstance, given his environment on home confinement. Perhaps it would be if he were in a setting of incarceration, but the question is whether or not it is. So although we can come back here, if the BOP orders him to go back in, then we can have part two of this case? Do you agree with that? Yes, Your Honor. And he could be sent back to prison immediately? It is wholly speculative whether or not he will ever be sent back to prison. I thought the memorandum said that they could do it. The December 2021 memorandum from the Office of Legal Counsel opines that as of right now, there will be no automatic return to prison for inmates released based on COVID reasons to home confinement. Hypothetically, BOP retains the discretion to allow an inmate to come back to prison if they violate the conditions of their home confinement. There is absolutely no reason to believe, based on the record of this case right now, that BOP will exercise its discretion to return Mr. Malone to a facility of incarceration. If, in the event that that were to happen, however unlikely, of course Mr. Malone could renew a motion for compassionate release and immediately move to stay his return to a facility of incarceration. And at that point, the question of whether or not there is E&C to justify a reduction in sentence to release him from any term of incarceration would be ripe and appropriately reconsidered by the district court. But right now, that possibility is too speculative to warrant consideration at this stage. I'd like to address Judge Harris's concern, perhaps, that E&C is designed to reduce the sentence regardless of the place of incarceration. If I understand Judge Harris's concern correctly, the district court judge should be determining whether or not a sentence reduction is warranted regardless of whether or not the defendant is on home confinement. Well, it's called a motion for a sentence reduction, and it doesn't say you have to be in prison. So I don't, I mean, you make it sound like that's sort of a bizarre reading of the statute, but it's a motion for sentence reduction, not a motion to get out of prison. Absolutely, Your Honor. And so I wanted to affirm that we do not dispute that he would be eligible to apply for a motion for compassion release because he's still serving a sentence, and he is still under a period of confinement, albeit home confinement. But the question is whether or not under the facts and circumstances individualized to this defendant, he has presented extraordinary and compelling reasons to justify a reduction in sentence. Judge Jones has determined that one of those facts and circumstances to be considered is the fact that he's not in a facility of incarceration, that he is in home confinement. And you must consider that environment when layered on to the fact that he's asserting a medical basis as the reason to have a reduction in sentence. The thing that is, I understand that. The thing that is missing to me is the part where the district court, using the right standard, sort of considers his medical condition and his advanced age. You know, whether you're in home or in prison, like it obviously affects both whether, you know, this is still a just sentence. And I understand if it's not extraordinary and compelling, we're not already over at the 3553A factors. But you would still want to see some acknowledgment, at least I would, that a district court considered under the right standard whether this is the kind of person who still needs to be serving a prison term, whether it is in home or in prison, given the level of threat they pose, the sort of need for deterrence, things like that. And I just don't, and even whether this counts as an extraordinary and compelling circumstance, I think I'm just missing the part where the district court considered anything but the fact that he's still at home. Yes, Your Honor, I understand the concern, if I may address it briefly. As you've acknowledged, there's a two-step analysis. There's E&C and 3553A. We've explained that for E&C, it is our understanding that the district court considered the fact that Do you understand the district court to have considered anything else? Yes. He considered the results of the home study. He considered the fact that Mr. Malone was in his own home, not his brother's home, where he was initially required to be. The BOP had allowed him to transfer to his own home. These are all just different ways of saying he's at home and his medical needs are met at home. Did he consider anything else? Yes, to the extent that he adopted the government's brief. Okay, but he didn't say anything else. The only thing we know the district court was thinking is he's at home. He's at home and he is getting his medical needs met and he's getting his daily needs met and all of these other arguments that Mr. Malone proffered to the district court that he had hurdles because he was at home that he could not get his medical needs met turned out not to be true. The argument goes, I think, if I understand Mr. Malone correctly, that home confinement is not sufficient because Mr. Malone has these serious medical needs and there are limitations when you're on home confinement that preclude Mr. Malone from getting those needs met. But the home study belied that assertion. The home study confirmed that indeed Mr. Malone was getting his medical needs met, that he was not an escapee when he had to seek medical treatment, that the system was working appropriately and fairly so that Mr. Malone was not suffering in getting his medical needs met. So it's not as though Judge Jones said, he's at home, I can close the book on this one, I don't have to wonder about anything else. Judge Jones inquired deeply into this matter. I mean, there was a home study done. And the question of whether or not Mr. Malone's medical condition was so serious as to require further relief beyond home confinement was the central thesis of the entire underlying proceeding. It's where Judge Jones spent the most of his attention and spelled out his reasoning in his district court decision. And again, it bears repeating, the only issue on appeal is the procedural challenge. So whether or not Judge Jones' explanation for why being on home confinement, even with these medical conditions, did not amount to an E&C, satisfies High. And here, based on the description that Judge Jones gave in his decision, it more than adequately explains the basis for his decision and gives this court comfort that he considered all of the arguments. Well, it may be too narrow in terms of procedurally because if you're only looking at home confinement being the realm or the extent of the request, then that's procedurally a problem, perhaps. That is because it was beyond that. The request is to reduce the sentence. And you agree that that was a request, correct? Yes, Your Honor. And do you agree that if you Venn diagram it, that reduction of the sentence is the bigger circle and home confinement is the small one? No, Your Honor. Oh, you don't? No, Your Honor. Give me your schematic then of Venn diagram and that. I think of it as more of a staircase. The first step is showing E&C. Have you established an extraordinary and compelling basis, reviewed for an abusive discussion? We're talking about the request for relief now with Venn diagram and relief. Yes. So the first step to even get into the circle is to establish E&C. And that is reviewed for an abusive discretion, and here only the procedural step with respect to E&C is being reviewed. There is no substantive challenge to whether or not E&C was established, only a procedural challenge. And so once a district court judge determines that there is – But the procedures are the fact that he said, go and look in this man's home, do a home study, and let's look at the nature of his conditions, where he is, and what his treatment is. We know that procedurally. And beyond that, it seems like district court was satisfied. He's at home. He's doing the best he can. That's fine. But the request is that his sentence be reduced. What difference does it make what medicine it is he's getting to that question? Now, it might be a factor, but that seemed to me that was the sine qua non of the whole thing. Check his home, check, fine. End of story. That's not the end of the story procedurally. No, because you have to look at whether or not, in fact, he merits reduction of his sentence. Yes, Your Honor, and in so doing, not only does the court look at the medical conditions and the environment in which the defendant is living, but also what percentage of the sentence has been served, whether or not there are other factors that would affect the E&C decision. And if he doesn't get the sentence reduced, he can be sent back by the Bureau of Prisons. In the Bureau of Prisons' discretion, that would be conceivably possible. Very unlikely in this case. That wasn't taken into account. Pardon me, Your Honor? That wasn't taken into account. That was not specifically addressed in the district court's decision. However, that argument also – The home confinement could end, period. Yes, Your Honor, but that argument was made to the district court that Mr. Malone's compassionate release should be granted because if the pandemic ends, Mr. Malone could be returned to prison. And that was made only in the context of the argument that COVID-19 is a basis for compassionate release, that it alone is E&C. And, of course, the government responded to that argument in its brief, which was then adopted by the district court, saying, but once the pandemic ends, there would be no risk of contracting the virus in a prison setting, and therefore the basis on which you'd be seeking compassionate release likewise ends. There was not an argument presented to the district court related to Mr. Malone's health conditions, separate and apart from the COVID pandemic, about his return to prison. It is also, as the Seventh Circuit explained in United States v. Shorter, which was the subject of the 28-J letter, wholly speculative that Mr. Malone would ever be returned to a term of incarceration in a prison facility. And the government readily acknowledges that if that were to happen, however unlikely, that the motion for compassionate release could be renewed, a motion to stay the return to the prison facility could be filed, and the district court would have the benefit of the current individualized set of circumstances to make a different determination. But back in 2020, when Mr. Malone presented to the district court on home confinement with medical conditions at the district court in his judgment after having experienced Mr. Malone's filings for 13 years, including a compassionate release motion only the year before, determined that he was not eligible for, that was an appropriate exercise of his discretion. I think you're running too fast past that first denial, because as you say, probably everything kind of goes into the mix. And the first denial was under the wrong legal standard. And also, even if that had been the legal standard, well, let me just leave it at that. It's under the wrong legal standard. And so I do have a concern that the district court here was kind of factoring in the original denial, but it turns out we now know, in retrospect, the original denial was wrong. And I'm having trouble kind of isolating that out. There's nothing in the record to suggest that Judge Jones applied an erroneous legal standard in this decision. And to the contrary, Judge Jones is the only district court judge in the Avignon Division, handles all of the compassionate release filings in that division. The Western District of Virginia has handled well over 500 compassionate release filings. We're a very small district. And Judge Jones is the only judge in Avignon handling those matters. Yeah, I'm not suggesting he applied the wrong standard in the second order. I'm suggesting that because he applied the wrong standard in the first order, nobody's fault. But we are left without an explanation for why, apart from the erroneous legal standard, this man's medical condition and age don't warrant a reduction in sentence. It's nobody's fault. But just because of this weird kind of interplay with McCoy, I have no doubt that Judge Jones would have explained himself in the first order had there not been this kind of wrong legal standard problem. But just the way it played out, we don't have that explanation. Yes, Your Honor. And perhaps that would be fatal to this appeal if Judge Jones had adopted his prior decision. But he did not do so here. He did not rely on the prior decision. Certainly the fact that he handled the prior decision makes him aware of Mr. Malone's circumstances, but he did not incorporate it by reference into this decision. But you incorporated it by reference into your argument two seconds ago, which is why I raise this. You said, like, he's got this familiarity, he has the full context. This is my concern, that for the same reason it would seem natural for us to look at that, it might have played some role here. Understood, Your Honor. However, the government's brief in opposition to the motion for compassionate release expressly discussed the McCoy decision and acknowledged that the policy statement was not binding. In fact, there are multiple pages of the government's opposition, if I recall correctly, that address this very issue. And Judge Jones expressly stated that he reviewed the briefs and was adopting the United States brief and the reasons asserted therein. I think that the fair inference from that statement is that he understood McCoy had changed the binding effect of the policy statement and to whatever degree that had informed his 2019 decision would not be appropriate again in 2020. The point I was trying to make about his familiarity with the case is that this is not the situation where you have a judge stepping in and meeting a defendant for the first time in the context of a compassionate release motion. This judge adjudicated Mr. Malone's proceedings start to finish. He had a very strong command of the severity of Mr. Malone's offense, who possessed a short-barreled shotgun in furtherance of a very serious drug trafficking crime and was sentenced to 24 years for his offense conduct. At the time of the compassionate release motion, however sympathetic his medical condition may be, he had only served half of that sentence. He had a very significant period of incarceration left to serve. And this judge, with the benefit of knowing the full context of the case, our prior review of the 3553A factors, exercised his discretion appropriately to deny compassionate release at this time. And we would ask that this court affirm that judgment, find it to be procedurally adequate, and to deny the appeal. Thank you. Thank you, Ms. Taylor. Ms. Brenner? Your Honors, I'll start with the last point. First, under Chavez-Mesa, the record as a whole, given both orders and the 13 years in between sentencing, the orders themselves do not sufficiently address the appropriate legal standards, but also I would argue that that 13 years in between the first sentencing and when Mr. Malone was requesting compassionate release, significant things had changed, including his health circumstances, COVID, the mitigating efforts that he had undertaken while he was in prison, and the fact that BOP had determined he was no longer a danger to the community. The Holmes study itself is concerning because it is just a snapshot in time. Saying that Mr. Malone's needs are met when his conditions are degenerative shouldn't be given a whole lot of weight. His heart is not going to get better. His liver and kidneys are not going to improve. He will always have a colostomy bag, and if he is re-imprisoned, the stoma where the colostomy bag attaches could become reinfected, which happens. Ms. Brenner, you mentioned, I think, an important clinical word. You said degenerative. Yes. That means it has an impact on his life expectancy, doesn't it? Yes, it does. Do you think a reduced life expectancy would have some impact on how much time you need to serve to be punished in terms of what's left? In terms of extraordinary fact, do you think that is important? I do think it is, Your Honor. I think that there's a reason it's called compassionate release. Right. It's compassionate release. It's like somebody is about to die in six months, and they've done something horrible, but they want to be considered, can I take my last breath on a mountainside where I grew up? Your Honor, I— Those things are important. That's what compassion means, isn't it? Yes. Okay. I was just wondering in terms of your argument. We'll get to that. I appreciate that, Your Honor, because I'm concerned about what the government thinks constitutes extraordinary and compelling at this point. Yes, he could always submit another petition for compassionate release if he is re-imprisoned. If he is re-imprisoned, he can catch COVID in an unventilated room from a contagious person in six seconds. He could catch the flu in that time, and it could be deadly for him. I'm not sure how many new holes need to be punched into his body because his colostomy bag is continually reinfected until he is compassionate enough to have his sentence reduced. The 3553A sentencing factors are not an issue at this point. He is bedridden most of the day. I spoke to him recently. He makes jokes about getting old, but he isn't feeling well. He is cancer-free at the moment, but they are continually scanning him, and they're not sure what's happening with him right now. I am truly afraid that my client will have an emergency. He will go to call BOP or his counselor before he gets medical attention because he is terrified of returning to prison. He knows what happens if he returns to prison. It isn't speculative. He lives with it every single day, and I don't think calling that speculative is appropriate. I think the district court should have applied the legal analysis in front of it and considered his very specific circumstances. As Judge Harris said, it's an individualized determination. Here, an individualized determination would determine that at this point, even home confinement is not enough for his conditions. The original petition to this court requested supervised release where he could go to an emergency room without fear of being thrown back in prison, where he would have the time and space to get his needs met. He is a long line at a pharmacy away from having his life in danger, and those risks themselves put additional strain on him when he already has a bad heart. I would submit that the appropriate thing to do would be to remand so that the district court can finally give Mr. Malone that individualized determination, but what would be appropriate for him at his age with his health conditions. Thank you. Thank you very much. Thank you both. I think you are present. We cannot come down and shake your hands, but know very much that we appreciate your being here, and in that spirit, thank you and wish you well.
judges: Roger L. Gregory, Robert B. King, Pamela A. Harris